O

# United States District Court
# Central District of California

| | |
|---|---|
| TIMOTHY GANTT,<br>   Plaintiff,<br> v.<br>CITY OF LOS ANGELES, et al.,<br>   Defendants. | Case No.: 2:08-cv-05979 ODW (CWx)<br>Case No.: 2:09-cv-08565 ODW (CWx)<br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [269]** |
| MICHAEL SMITH,<br>   Plaintiff,<br> v.<br>CITY OF LOS ANGELES, et al.,<br>   Defendants. | |

## I. INTRODUCTION

Despite the fact that this case has already proceeded to trial once, Defendants have filed a Motion for Summary Judgment on Plaintiffs' claims for constitutional violations under 42 U.S.C. § 1983. For the reasons discussed below, the Court **DENIES IN PART** and **GRANTS IN PART** Defendants' Motion for Summary Judgment. (ECF No. 269.)

## II. FACTUAL BACKGROUND

Timothy Gantt and Michael Smith were tried and convicted of the August 19, 1992 murder of Kalpesh Vardhan, who had been stabbed 19 times during an apparent robbery. (SUF 1–2.) The principal eyewitness of the crime was a local burglar named David Rosemond. (SUF 57.) Rosemond had identified Gantt and Smith after interrogation by police officers. (SUFs 15–16, 19–22.) Rosemond chose Gantt's photo from a mug book when he recognized Gantt as someone who robbed him in the past. (Rosemond Depo. 38:12–39:9.) Rosemond provided no justification for choosing Smith's photo. (SUF 33.)

In 2004, the Ninth Circuit reversed the denial of Gantt's federal habeas petition, holding the prosecutor failed to disclose *Brady* evidence, which negated his alleged connection to the murder victim. (SUF 3.) The Ninth Circuit ordered an evidentiary hearing on remand. (SUF 3.)

The evidentiary hearing resulted in the issuance of a writ of habeas corpus and retrial. (SUF 4.) During the 2008 retrial, Rosemond recanted his original identification of Gantt. (SUF 58.) The prosecution moved to dismiss all charges against Gantt with prejudice, and he was released. (SUF 5.) Smith subsequently prosecuted a writ of habeas corpus and was released in 2009. (SUFs 5, 59.)

Gantt and Smith filed separate lawsuits for violations of their constitutional rights under 42 U.S.C. § 1983, which were consolidated for discovery and trial. (SUF 6.) The lawsuits went to trial on claims for malicious prosecution, due process, and fabrication of evidence, *Brady*, failure to gather and preserve evidence, unconstitutional identification, conspiracy to violate constitutional rights under § 1985, and *Monell* liability. (SUF 7.) The jury returned a verdict for the Defendants on all claims. (SUF 8.)

On appeal, the Ninth Circuit remanded the case for a new trial on three grounds: (1) instructional error on the deliberate-fabrication-of-evidence claim; (2) instructional error on the conspiracy claim; and (3) failure to explain why it did not give a jury

instruction on the *Brady* claim. *Gantt v. City of Los Angeles*, 717 F .3d 702, 709 (9th Cir. 2013).

### III. LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### IV. DISCUSSION

Defendants filed the present Motion for Summary Judgment asserting that they are entitled to summary judgment on the deliberate-fabrication-of-evidence, *Brady*, and conspiracy claims, because either (1) the Defendants are entitled to qualified immunity, or (2) Plaintiffs lack sufficient evidence to support their claims.
///

Defendants further assert that Plaintiffs cannot adduce any evidence to support their *Monell* claim. The Court considers each in turn.

**A.  Qualified Immunity**

Defendants now—upon remand from the Ninth Circuit—argue that they are entitled to summary judgment because qualified immunity shields them from Plaintiffs' claims. Qualified immunity protects government officials acting in their official capacities from liability, so long as their conduct does not violate a clearly established right. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An officer who makes a "reasonable mistake" does not violate a "clearly established" right. *Venegas v. Cnty. of L.A.*, 153 Cal. App. 4th 1230, 1241–1242 (Ct. App. 2007). An official is afforded immunity if he acts under an objectively reasonable belief that his conduct is lawful. *Guerra v. Sutton*, 783 F.2d 1371, 1374 (9th Cir. 1986). When analyzing a qualified-immunity analysis, the court determines whether (1) the plaintiff alleged sufficient facts to show that the defendant's conduct violated a constitutionally protected right, and (2) the violated right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Under the "clearly established" prong, a court considers whether it would have been clear to a reasonable government actor that her conduct was unlawful under the circumstances. *Saucier*, 533 U.S. at 202; *Marquez*, 322 F.3d at 692–93.

   *1.   Deliberate fabrication of evidence*

Defendants argue that qualified immunity shields them from Plaintiffs' deliberate fabrication of evidence claims. This argument ignores the Ninth Circuit's admonition that the fabrication-of-evidence question was "triable and for the jury to resolve." *Gantt v. City of Los Angeles*, 717 F.3d 702, 708 (9th Cir. 2013).

In *Gantt*, the Ninth Circuit expressly stated that "there is a clearly established constitutional due-process right not to be subjected to criminal charges on the basis of false evidence that was deliberately fabricated by the government." 717 F.3d at 709 (quoting *Devereaux v. Abbey*, 263 F.3d 1070, 1074–75 (9th Cir. 2001)). Although the

1  Ninth Circuit found that the Court committed an instructional error, it also found that
2  "there was sufficient evidence to instruct the jury on the claim of fabrication of
3  evidence," because "a reasonable juror could have concluded that the 'Defendants
4  used investigative techniques that were so coercive and abusive that they . . . . should
5  have known that those techniques would yield false information.'" *Gantt*, 717 F.3d at
6  708. Indeed, the Ninth Circuit noted that the Court was correct in recognizing that
7  "the plaintiffs produced enough proof of their claim of fabrication of evidence to both
8  survive a motion for judgment as a matter of law and to have the jury instructed on
9  that theory." *Id.* at 708–09. Accordingly, the Defendants' motion for summary
10 judgment on Plaintiffs' fabrication-of-evidence claim is **DENIED**.

        *2.*     Brady *violation*

Defendants also contend that they are entitled to qualified immunity from Plaintiffs' *Brady* violation claims. In the alternative, Defendants assert that Plaintiffs cannot prove a Brady violation as a matter of law.

"*Brady* suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor." *Youngblood v. West Virginia*, 547 U.S. 867, 869–70 (2006) (per curiam) (citation and quotation marks omitted). *Brady's* requirement to disclose material exculpatory and impeachment evidence to the defense applies equally to prosecutors and police officers. *Tennison*, 570 F.3d at 1087; *Kyles v. Whitely*, 514 U.S. 419, 437–38 (1995). To state a *Brady* violation claim the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff." *Smith v. Almada,* 640 F.3d 931, 939 (9th Cir.2011); *accord Milke v. Ryan,* 711 F.3d 998, 1012–13 (9th Cir. 2013).

Here, Plaintiffs' *Brady* claim was premised on the police officers' failure to disclose that Rosemond told them that he had been robbed by Gantt in the past. Plaintiffs contend that they could have used that information to show Rosemond's

animosity towards Gantt and thereby impeach his story. Defendants argue that the detectives are entitled to qualified immunity on the *Brady* question because they assert that there was no clearly established law that put them on notice that this *particular* evidence constituted *Brady* material. This argument is specious.

In *Brady*, which was settled law at the time of Plaintiffs' trial, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process." *Brady v. Maryland,* 373 U.S. 83, 87 (1963). In *Giglio v. U.S.*, 405 U.S. 150, 154 (1972), the Supreme Court extended the Brady disclosure duty to impeachment information as well as exculpatory evidence. Thus, witness impeachment information is required to be disclosed if the reliability of the witness may be determinative of the defendant's guilt or innocence. *Id.* Consequently, it was clearly established at the time that police officers were required to turn over any material impeachment evidence.

Rosemond's testimony was clearly material impeachment evidence. The record establishes that the government's weak case against Plaintiffs primarily hinged on Rosemond's identification of Plaintiffs. Indeed, after Rosemond recanted his testimony, the government's case collapsed. Thus, any evidence that could impeach Rosemond's identification was material.

Defendants argue that even if the evidence was material, it was cumulative to the other impeachment evidence presented at trial: Rosemond's convictions, parole, drug use, and theft of the murder victim's ATM card. But none of this impeachment evidence involves Rosemond's animosity or bias towards Gantt. Consequently, this evidence was not cumulative impeachment evidence and properly constituted *Brady* material the officers were required to disclose.

In the alternative, Defendants argue that the detectives' failure to disclose this evidence cannot, as a matter of law, make out a *Brady* violation because the evidence is inculpatory rather that exculpatory. This argument is contradicted by the Ninth Circuit's reversal order. In *Gantt*, the Ninth Circuit held that this Court erred when it

failed to give a *Brady* instruction without explanation. *Gantt*, 717 F.3d at 709. The Ninth Circuit acknowledged Plaintiffs' argument that they could have used that information as evidence of Rosemond's animosity towards Gantt and thus impeach his story. *Id.* But the Ninth Circuit also acknowledged that another reasonable explanation for declining to give a *Brady* instruction was that the Court determined that the police were not at fault for failing to see the mitigating value of the evidence. *Id.* It noted that the police could have reasonably viewed the statement as more incriminating than mitigating because it showed Gantt's propensity to rob and his familiarity with the person he purported to identify. *Id.* The mere fact that the Ninth Circuit acknowledged that the evidence was susceptible to two different analyses forecloses Defendants' conclusion that Plaintiffs have failed to make out a *Brady* claim as a matter of law. Accordingly, the **DENIES** the Defendants' motion for summary judgment on Gantt's and Smith's second claim for relief for *Brady* violation.

### 3. *Conspiracy*

Defendants assert that they are entitled to qualified immunity from Plaintiffs' conspiracy violation claims. In the alternative, Defendants assert that Plaintiffs cannot prove their conspiracy claims as a matter of law.

A conspiracy theory can support liability under § 1983. *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002). To prove a § 1983 conspiracy, the plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *Id.* Each participant in the conspiracy is not required to know the exact details of the plan, but each must at least share the common objective of the conspiracy. *Id.*

Plaintiffs' assert that there was a conspiracy to violate their civil rights because Detectives Lane and Reyes—who they assert violated their constitutional rights—were partners and at the time of their there was a competition in the homicide unit to solve murders. Defendants argue that qualified immunity should shield them from conspiracy liability because there is not "clearly established law that simply being law enforcement partners working in a unit where competition was away of bonding with

colleagues could subject them to civil liability." (Mot. at 16.) This argument misconstrues the Plaintiffs' conspiracy allegations. Plaintiffs do not allege that the object of the conspiracy was to solve the homicide for the purpose of the competition, but rather to solve the homicide by violating Plaintiffs' constitutional rights—by fabricating evidence and failing to comply with Brady disclosures. Plaintiffs assert that there was an agreement or common objective to engage in the illegal conduct implicated in this lawsuit. Accordingly, the cases that create the clearly established right to Brady disclosures and to be free from subjection criminal charges based on false evidence that was deliberately fabricated by the government are sufficient law to clearly establish civil liability for conspiring to do so.

In the alternative, Plaintiffs assert Detectives Lane and Reyes' partnership and the existence of a competition in the homicide unit to solve murders cannot, as a matter of law, be sufficient evidence to conclude that there was a conspiracy to violate Plaintiffs' civil rights. But this is properly a question of fact that should go to the jury. Accordingly, the Court **DENIES** the Defendants' motion with respect to Gantt's fourth and Smith's tenth claim for relief based on Conspiracy under 42 U.S.C § 1983.

**B.** *Monell* **liability**

Section 1983 allows for a civil action against any person who, under color of law, causes the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While the statute does not define "person" or address whether a governmental unit may be sued under its provisions, the United States Supreme Court in *Monell* held that a local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). A local government entity will be liable "only where the entity's policies evince a deliberate indifference to the constitutional right and are the moving force

/ / /

behind the constitutional violation." *Edgerly v. City & Cnty. of S.F.*, 599 F.3d 946, 660 (9th Cir. 2010).

To hold a municipality liable for the actions of its officers, a plaintiff must allege one of the following: "(1) that a [municipal] employee was acting pursuant to an expressly adopted official policy; (2) that a [municipal] employee was acting pursuant to a longstanding practice or custom; or (3) that a [municipal] employee was acting as a 'final policymaker.'" *Lytle v. Carl*, 382 F.3d 978, 982 (9th Cir. 2004).

Plaintiffs allege in their complaint that that the City of Los Angeles has ratified customs and practices which permit and encourage its officers to unjustifiably, unreasonably, and unlawfully subject persons known to be innocent to prosecution—specifically African Americans. (Compl. ¶ 89.) Plaintiffs further allege failure to discipline for and deliberate indifference to fabrication of evidence and witness coercion. (*Id.* 90–91.) But Plaintiffs have not presented any evidence to support their allegations that the City caused any of their constitutional violations. Plaintiffs do not articulate any specific City policy that has that resulted in their constitutional violations, nor any specific incidents of supervisors' failure to discipline for or deliberate indifference to constitutional violations. Instead, in opposing the summary-judgment motion, Plaintiffs focus on the fact that the *City* has not produced any evidence that Plaintiffs have insufficient evidence to carry its burden of persuasion at trial. This is improper. Plaintiffs conclusory allegations fail to surmount *Monell*'s high barrier to municipal liability at this summary-judgment stage. Accordingly, the Court **GRANTS** the City's motion with respect to *Monell* liability in this case.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

## V.   CONCLUSION

For the reasons discussed above, the Court **DENIES** the Defendants' Motion for Summary Judgment with respect to the deliberate-fabrication-of-evidence, *Brady*, and conspiracy claims. (ECF No. 269.) The Court GRANTS the Defendants' Motion with respect to Plaintiffs' *Monell* claim. (*Id.*) A judgment will issue.

**IT IS SO ORDERED.**

May 7, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**